FARMERS INSURANCE COMPANY, Respondent,

v.

David McFARLAND, Appellant.

No. WD 54948.

Missouri Court of Appeals, Western District.

July 21, 1998.

As Modified Sept. 1, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 1, 1998.

Application for Transfer Denied Oct. 20, 1998.

Thomas J. Walsh, Lee's Summit, for Appellant.

Lance W. LeFevre, Kansas City, for Respondent.

Before HANNA, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

David McFarland appeals the circuit court's summary judgment for the respondent, Farmers Insurance Company, in the amount of $12,900 for reimbursement of benefits paid by it to him under a personal injury protection (PIP) endorsement of a Kansas motor vehicle insurance policy. The benefits paid were for medical expenses and lost wages the appellant incurred for injuries he received in an accident in which he was a passenger in a motor vehicle licensed in Kansas and driven by Michael Smith, a Kansas resident who was insured by the respondent.

The appellant raises three points on appeal. Points I and II are alternative challenges to the trial court's granting of the respondent's motion for summary judgment on its claim, while Point III challenges the trial court's denial of the appellant's motion for summary judgment on his counterclaim.

In Point I, in two subpoints, the appellant claims that the trial court erred in granting summary judgment to the respondent because there were genuine issues of material fact in that there was a factual dispute as to: (a) whether the benefits paid to him were PIP payments, requiring reimbursement to the respondent upon the appellant's recovery from the tortfeasor who caused the accident, or whether the payments were made pursu-

ant to the policy's liability provision, requiring no reimbursement; and, (b) whether the claim of the appellant against the tortfeasor had been assigned to the respondent by virtue of the fact that the appellant failed to pursue his claim within eighteen months, extinguishing the respondent's right to reimbursement from the appellant as provided in the policy.

In Point II, the appellant claims that the trial court erred in granting summary judgment to the respondent because it was not entitled to judgment as a matter of law in that, based on the undisputed facts, the policy's PIP reimbursement and subrogation provision was unenforceable in a Missouri court as being against Missouri's public policy prohibiting the assignment of personal injury claims.

In Point III, the appellant claims that the trial court erred in denying his motion for summary judgment on his counterclaim against the respondent for tortious interference with a contract.

We reverse and remand in part and dismiss in part.

### Facts

On December 23, 1993, the appellant was injured in a motor vehicle accident near Odessa in Lafayette County, Missouri, while a passenger in a vehicle owned and operated by Michael Smith, a Kansas resident. Mr. Smith's vehicle was hit broadside by a vehicle driven by Scott Alber. Mr. Smith's vehicle, licensed in Kansas, was insured under a Kansas insurance policy issued by the respondent.

Following the accident, the appellant made a claim for any benefits due him under Mr. Smith's policy as a passenger injured while occupying Mr. Smith's vehicle. Pursuant to that claim, the respondent paid medical and lost income benefits to the appellant in the amount of $12,900. The appellant also made a claim against the alleged tortfeasor, Scott Alber, through Motorists Insurance Company, Mr. Alber's liability insurance carrier. The appellant and Motorists Insurance settled the claim for $125,000.

The PIP reimbursement provision in Mr. Smith's policy provided that the respondent was to be reimbursed for benefits it paid in the event the injured person recovered by judgment, settlement or otherwise from the tortfeasor to the extent it was duplicative of the PIP benefits paid. The appellant refused to reimburse the respondent for the $12,900 in PIP benefits paid to him by the respondent. As a result, the respondent filed its petition for declaratory judgment and/or reimbursement in the Jackson County Circuit Court on December 6, 1995, requesting: (1) a declaration of its right to reimbursement of PIP benefits paid in the event that the appellant recovered from a third-party tortfeasor; and, (2) reimbursement of the $12,900 paid to the appellant pursuant to the policy's PIP provision. The appellant filed a counterclaim for damages alleging tortious interference with a contract.

The respondent filed on May 15, 1997, a motion for summary judgment on its petition for declaratory judgment. On June 23, 1997, the appellant filed a motion for summary judgment upon his counterclaim. The trial court subsequently sustained the respondent's motion, while overruling the appellant's. On September 5, 1997, the appellant filed a motion for reconsideration, which the trial court denied.

This appeal follows.

### Standard of Review

The purpose of summary judgment under Missouri's fact-pleading regime is to identify cases (1) in which there is no genuine dispute as to the facts and (2) the facts as admitted show a legal right to judgment for the movant.

*ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 380 (Mo. banc 1993).

When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*Id.* at 376 (citations omitted). We will review the record in the light most favorable to the party against whom judgment was entered and accord him the benefit of all reasonable inferences from the record. *Id.* Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact; and, (2) the movant is entitled to judgment as a matter of law. *Id.* at 377.

### I.

The appellant contends in Point I that the benefits he received were not PIP payments, and therefore, were not subject to the policy's PIP reimbursement endorsement. In Point II, he claims that even if the benefits paid were PIP payments, the trial court still erred in granting summary judgment to the respondent because it was not entitled to judgment as a matter of law in that, based on the undisputed facts, the PIP reimbursement provision of the policy was unenforceable in a Missouri court as being against Missouri's public policy prohibiting the assignment of personal injury claims. Logically, we will address the appellant's claim in Point II before addressing his claim in Point I, because if the former is correct, it would render the issue raised in the latter moot.

The respondent contends that it was entitled to reimbursement because the benefits paid to the appellant were PIP payments subject to reimbursement pursuant to the policy's PIP endorsement, which was enforceable in Missouri, in that it is undisputed that the policy was a Kansas insurance contract requiring Missouri courts to apply Kansas law upholding such an endorsement.

The issue for us to determine is whether the PIP lien in the motor vehicle insurance policy in question, a Kansas contract, was unenforceable in a Missouri court as being against Missouri's public policy prohibiting the assignment of personal injury claims, where the accident for which benefits were paid occurred in Missouri and the party from whom reimbursement is sought, the appellant, is a Missouri resident. The resolution of this issue turns on whether Kansas or Missouri law is applied. If Kansas law is applied, the lien is enforceable.. If Missouri law is applicable, it is not.

To be entitled to summary judgment under Rule 74.04, the respondent must have satisfied the two-part test that: (1) there was no genuine dispute as to the material facts; and, (2) the undisputed facts demonstrate it was entitled to judgment as a matter of law. *ITT*, 854 S.W.2d at 380. Where the claimant, as in the case at bar, seeks summary judgment, he or she has the burden of establishing all of the facts necessary for his or her claim and showing entitlement to judgment as a matter of law. *Id.* at 381. Thus, given the undisputed facts in this case, the respondent here, in order to be entitled to summary judgment as a matter of law, had to show, *inter alia*, that the policy's PIP reimbursement provision was enforceable in Missouri as not being against public policy.

■ All Kansas motorists are required to maintain an insurance policy conforming to the requirements of the "Kansas Automobile Injury Reparations Act." *Bell v. Mid–Century Ins. Co.*, 750 S.W.2d 708, 710 (Mo.App. 1988).

> [The act] provides for payment under the insurance policy to the insured of certain benefits called 'personal injury protection benefits' which includes 'disability benefits, funeral benefits, medical benefits, rehabilitation benefits, substitution benefits, and survivors benefits.'

*Id.* Section 40–3113a(b) of the act provides, in pertinent part, that: "[i]n the event of recovery from [the] tortfeasor by the injured person ... by judgment, settlement or otherwise, the insurer ... shall be subrogated to the extent of duplicative personal injury protection benefits provided to date of such re-

covery and shall have a lien therefor against such recovery...." KAN. STAT. ANN. § 40–3113a(b) (1988).

> It is an integral part of the scheme that the insured, who has received such benefits from [the insurer] under the insurance policy, is not entitled to retain in addition thereto the sum which he may receive from the tortfeasor for the same losses. The [insurer] is entitled to subrogation 'to the extent of duplicative personal injury protection benefits.'

*Bell*, 750 S.W.2d at 710 (citations omitted). In conformity with Kansas law as to PIP benefits, the policy in question here included a reimbursement and subrogation endorsement, which, in pertinent part, states as follows:

**D. Reimbursement and Subrogation**

...

> In the event of recovery by the eligible injured person ... against a tortfeasor ... the [insurer] shall be subrogated to the extent of duplicative [PIP] benefits provided to date of such recovery and shall have a lien therefor against such recovery and the [insurer] may intervene in any action to protect and enforce such lien. Whenever any judgment in any such action, settlement or recovery otherwise shall be recovered by the eligible injured person ... the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of [PIP] benefits paid to date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of said [PIP] benefits.

The enforceability in Missouri courts of a PIP lien under a Kansas insurance policy for reimbursement of PIP payments resulting from a Missouri accident was specifically addressed by this court in *Gilmore v. Attebery*, 899 S.W.2d 164 (Mo.App.1995), which we find to be controlling here.

In *Gilmore*, a Kansas insurer brought a subrogation action in a Missouri court in the names of its Kansas insureds against an Illinois tortfeasor seeking reimbursement pursuant to its PIP lien under a Kansas insurance policy for PIP benefits it had paid to its

insureds who were injured in a Missouri accident. The issue presented was whether Kansas or Missouri substantive law would apply in determining the enforceability of the PIP lien against the tortfeasor who was neither a Kansas resident nor a party to the contract of insurance. The tortfeasor was arguing for the application of Missouri law in that he was contending that the PIP lien in favor of the Kansas insurer was an assignment of a personal injury claim which under Missouri law was unenforceable as being against public policy. The insurer was arguing for the application of Kansas law which specifically recognized the validity of the PIP lien. In making its argument, the Kansas insurer, as does the respondent here, relied on *Hartzler v. American Family Mut. Ins. Co.*, 881 S.W.2d 653, 655 (Mo.App.1994) and *Bell v. Mid–Century Ins. Co.*, 750 S.W.2d 708 (Mo.App.1988). The *Gilmore* court, recognizing that the assignment of a personal injury claim is against Missouri public policy, *see Waye v. Bankers Multiple Line Ins. Co.*, 796 S.W.2d 660, 661 (Mo.App.1990); *Travelers Indem. Co. v. Chumbley*, 394 S.W.2d 418, 423 (Mo.App.1965), and distinguishing *Hartzler* and *Bell*, held that a PIP lien in a Kansas insurance contract, as governed by Kansas law, would not be enforced in Missouri courts against a party to the lawsuit who was not a party to the insurance contract, as being against Missouri's public policy prohibiting the assignment of personal injury claims. *Gilmore*, 899 S.W.2d at 170. In so holding, the court stated, "[w]hile Kansas rights of assignment have been enforced as to Kansas residents suing in Missouri, due process concerns prevent us from extending such comity to the facts of the case at bar." *Id.*

In reaching its decision, the *Gilmore* court first applied the "significant relationship" test, which is found in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1969).[1]

The test has not only been adopted in Missouri for tort actions, but for contract actions as well. *Id.* at 166–67. Recognizing that both Missouri and Kansas had significant interests in and contacts with the case, the court found the significant relationship test to be inconclusive as to the issue presented and then turned to a "governmental interest" analysis. *Id.* at 167.

The "governmental interest" analysis provides that "[w]here two states have significant contacts and legitimate state interests in the choice of law, [the court] must apply the law of the state whose interest would be more impaired if its policy were subordinated to the policy of the other state." *Id.* Applying this analysis, the court concluded that if Kansas law was applied, Missouri's interest in upholding its public policy of non-assignability of personal injury claims would be more impaired than Kansas' interest, because Kansas' interest, as set forth in the "Kansas Automobile Injury Reparation Act," of " 'provid[ing] a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles . . . ,' " *id.* at 167 (citing KAN. STAT. ANN. § 40–3102), was met in that the injured parties had already been compensated for their injuries. In reaching this conclusion, the *Gilmore* court found that Missouri had a significant interest in applying its public policy of nonassignability of personal injury claims to Missouri residents and nonresidents alike. In addition, the court also noted that Kansas law could not impose liability in a Missouri court where the state's primary relationship to the case was the fact that the party-insurer was a Kansas resident. *Id.* at 168.

Having concluded that the "governmental interest" analysis weighed in favor of applying Missouri law, the court then turned to

---

1. (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,
(c) the domicil (*sic*), residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

the issue of whether the special rule of the "principal location of the insured risk" altered its decision. *Id.* at 169. The "principal location of the insured risk" rule is found in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 (1969).[2] "In an action *between the parties to an insurance contract,* the principal location of the insured risk is the most important contact to be considered in determining the applicable law." *Id.* at 169 (citing *Hartzler,* 881 S.W.2d at 655) (emphasis in original). This rule was relied on in *Hartzler* in determining that where Kansas insureds were injured in a Missouri accident and brought suit in a Missouri court under a Kansas insurance contract, Kansas law should apply upholding the validity of the uninsured motorist anti-stacking provisions of the policy. *Hartzler,* 881 S.W.2d at 655. The application of Missouri law would have rendered the opposite result in that Missouri public policy prohibits the enforcement of uninsured anti-stacking provisions. The *Gilmore* court opined that its case appeared on the surface to fall within the rule announced in *Hartzler.* However, it then concluded that the rule did not control in that, as in the case at bar, the dispute there was not between Kansas residents who were parties to the contract, as was the case in *Hartzler.* *Gilmore,* 899 S.W.2d at 169. In reaching its conclusion, it reasoned that parties to the contract should "be bound by their mutual expectations," and that "Kansas residents [ ] should not be surprised by the application of Kansas law to their Kansas contract of insurance." *Id.*

The *Gilmore* court also addressed and rejected the Kansas insurer's argument that the decision in *Bell* should control requiring application of Kansas law. In *Bell,* a Kansas insured was injured in a Missouri accident and was paid $5,000 in PIP benefits under a Kansas insurance policy by his Kansas insurer who brought suit in a Missouri court seeking reimbursement under the policy's PIP lien for the PIP benefits paid. The insured sought to invalidate the PIP lien

provision on the basis that it was unenforceable in a Missouri court as violating Missouri's public policy of nonassignability of personal injury claims. The *Bell* court, applying Kansas law, held that the Kansas insurer's PIP lien was valid and enforceable as to the Kansas insured. In *Gilmore,* the court rejected the insurer's claim that *Bell* was controlling on the basis that it, like *Hartzler,* and unlike its case, involved a dispute between Kansas residents who were parties to the insurance contract.

The respondent attempts to distinguish the case at bar from *Gilmore* on the basis that the instant case is a contract action between a Kansas insurer and a Missouri injured party where the issue is whether Kansas law should be applied in upholding the Kansas insurer's contractual right, under a Kansas insurance contract, for reimbursement from a Missouri injured party for PIP payments for personal injuries received in a Missouri accident; whereas, *Gilmore* was "essentially" a tort action between a Kansas insurer and an Illinois tortfeasor where the issue was whether Kansas law should be applied in upholding the Kansas insurer's right to bring suit against the Illinois tortfeasor in a Missouri court seeking reimbursement of PIP benefits paid to a Kansas insured for injuries allegedly caused by the tortfeasor in a Missouri accident. In other words, the respondent is contending that *Gilmore* should be restricted to cases it refers to as "essentially" tort actions, while *Hartzler* and *Bell* should control in contract actions, such as the instant case. We reject this contention, in that, in making it, the respondent misreads, in several respects, this court's holding in *Gilmore.*

First, the nature of the action in *Gilmore* was not one "essentially" in tort as the respondent asserts. As stated, *supra,* the suit in *Gilmore* was one in subrogation brought by a Kansas insurer in the names of its insureds pursuant to the parties' subrogation agreement in a Kansas insurance contract. This "species of right is classified as *conven-*

---

**2.** The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*tional subrogation."* American Nursing Res. v. Forrest T. Jones, 812 S.W.2d 790, 798 (Mo.App.1991) (emphasis in original). And, although to be entitled to recover under its right of subrogation, the Kansas insurer had to show that the alleged tortfeasor was, in fact, liable in tort to the injured insureds, its right to recovery was based on the terms of the insurance contract. Thus, although a tort was required to be shown as a prerequisite to the Kansas insurer's recovery in *Gilmore,* the subrogation action sounded equally in contract as it did in tort.

Second, as evidenced by our discussion, *supra,* contrary to the respondent's assertion, the analysis employed by the *Gilmore* court in determining the conflicts of law issue presented was clearly one of contract, rather than tort. Moreover, the court's decision was predicated on contract considerations, holding that a Missouri court would not apply Kansas law upholding a PIP lien against a nonparty to the contract, while distinguishing and rejecting the holdings in *Hartzler* and *Bell,* as we do here.

■ The respondent next contends that, even if Gilmore controls and Missouri law applies, Missouri public policy was not violated by requiring the appellant to reimburse it for PIP benefits paid to him. In this respect, the respondent asserts that because the appellant accepted the benefits of the insurance contract, he was estopped from disaffirming its burdens, in this case the effect of the PIP lien, citing *John Hancock Mutual Life Insurance Company v. Dawson,* 278 S.W.2d 57 (Mo.App.1955). Its reliance on this case is misplaced. *Dawson* has no relevance to the issue presented here in that it did not involve the disaffirmance of an insurance provision that violates public policy. The law is well settled in this state that, although parties to an insurance contract are free to contract for insurance coverage as they see fit, those provisions not violating public policy will be enforced as written, while those that do will be ignored and held by the courts to be unenforceable. *First Nat. Ins. Co. of America v. Clark,* 899 S.W.2d 520, 521 (Mo. banc 1995). This would be true whether the offending provision in question was a benefit or a burden to the party receiving benefits under the policy. *See Cameron Mutual Insurance Co. v. Madden,* 533 S.W.2d 538, 545 (Mo. banc 1976) (holding that although the insurance contract agreed to by the parties "limit[ed][the] insured to only one of the uninsured motorist coverages," the court found the provision violated public policy, as expressed in § 379.203, RSMo Supp.1972, and ignored the provision, permitting the insured to stack the uninsured motorist coverage).

■ The respondent further contends that there is no Missouri public policy against enforcing a contractual right of subrogation or reimbursement of PIP payments against an injured party out of settlement or judgment proceeds received from a tortfeasor because the same does not constitute an assignment of a personal injury claim. In support of this contention, it cites *Lading v. Sawtelle,* 720 S.W.2d 416 (Mo.App.1986). The respondent's contention is without merit. In reading *Lading,* we find that the court there found, as the respondent states, that "[t]he lien of which the statute and the [insurance contract] speak is not a lien upon the claim, but a lien on settlement or judgment proceeds." *Lading,* 720 S.W.2d at 418. However, in making this finding, the *Lading* court was addressing the issue of when a Kansas PIP carrier had a present interest of subrogation sufficient to allow it to intervene in an insured's suit for damages against the tortfeasor. The *Lading* court never addressed the issue presented here of whether the contractual assignment of a portion of settlement proceeds from a tortfeasor is the equivalent of the assignment of a personal injury claim for purposes of determining whether Missouri's public policy prohibiting such an assignment is violated. *Id.* However, this court has previously addressed the issue and held that an insurance contract provision for reimbursement of benefits paid from an insured to an insurer from settlement or judgment proceeds received from a tortfeasor is invalid because it is, in fact, an assignment of a claim for personal injury, which is against public policy. *Waye,* 796 S.W.2d at 661 (citing *Jones v. Aetna Casualty & Sur. Co.,* 497 S.W.2d 809, 812 (Mo.App. 1973)).

For the reasons stated, we find that Missouri law should be applied here, denying enforcement of the respondent's Kansas PIP lien against the appellant for reimbursement of the $12,900 in PIP benefits paid to him as being against Missouri's public policy prohibiting the assignment of personal injury claims. As such, we find that the trial court misapplied the law in upholding the PIP subrogation and reimbursement endorsement of the insurance policy in question and, thus, erred in entering summary judgment for the respondent, because the respondent was not entitled to judgment as a matter of law. *ITT*, 854 S.W.2d at 380.

Ordinarily, in reversing a summary judgment for one party on its claim, we would simply remand the cause for further proceedings on the claim consistent with our opinion. However, given our holding that, as a matter of law, the respondent is not entitled to judgment on its claim, we remand the cause to the circuit court to enter judgment for the appellant on the respondent's claim for reimbursement of PIP benefits paid by it to him under the PIP endorsement of the insurance policy.

## II.

In Point III, the appellant claims that the trial court erred in denying his motion for summary judgment on his counterclaim against the respondent for tortious interference with a contract.

As a general rule, the denial of a motion for summary judgment is not an appealable order. *Lake Center Boatworks, Inc. v. Martin*, 804 S.W.2d 842, 844 (Mo.App. 1991) (citations omitted). Because we find nothing extraordinary about the circumstances presented here that would cause us to vary from this general rule, we dismiss appellant's appeal as to his claim in Point III.

Point denied.

## Conclusion

The summary judgment of the circuit court for the respondent on its claim for reimbursement of PIP benefits paid under the insurance policy to the appellant, in the amount of $12,900, is reversed and the cause remanded to the court to enter a judgment in favor of the appellant. The appellant's appeal as to the circuit court's denial of his motion for summary judgment as to his claim of tortious interference with a contract is dismissed.

All concur.